## DISTRICT NAT. BANK v. MAIATICO.
### No. 5441.

Court of Appeals of the District of Columbia.
Argued April 7, 1932.
Decided July 11, 1932.

Ralph P. Barnard, of Washington, D. C., for appellant.

George P. Lemm, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, and GRONER, Associate Justices.

MARTIN, Chief Justice. .

An appeal from a judgment against a bank for money paid by it upon a check bearing, as alleged, an unauthorized indorsement.

It appears that Harry A. Bramow was the owner of a building lot in the District of Columbia, and in the year 1927 he began the erection of an apartment house thereon. He first secured a loan from a mortgage company in the sum of $110,000, to be advanced to him in installments according to the progressive construction of the building. The appellee, Maiatico, took the contract for the brickwork. While the building was yet under construction, Bramow sold the property to Maiatico, who proceeded to complete it. The mortgage company was notified of the sale, and was instructed to make all future payments of the loan to Maiatico.

On February 17, 1927, the mortgage company issued a check for $15,510, payable to the order of Maiatico, as an accrued installment of the mortgage loan. The check, however, was handed by the company to Bramow's secretary, who in turn delivered it to Bramow. Bramow thereupon wrote Maiatico's name as indorser upon the check, and deposited it for credit in his (Bramow's) account with the appellant bank. Bramow then issued two checks upon the bank, each payable to the order of Maiatico—the first being in the sum of $11,510; the second for $4,000. Bramow delivered these checks to Maiatico, who retained the proceeds of the first check, and indorsed the second check to another bank to pay a note of Bramow's upon which Maiatico was liable as indorser.

It is claimed by Maiatico that Bramow was not authorized to sign his (Maiatico's) name as indorser upon the check for $15,510, nor to obtain the proceeds thereof, and that this was done without his knowledge or consent. He claims furthermore that he was ignorant at that time of the amount then due him as an installment of the mortgage loan, and did not know that Bramow had secured the check and appropriated the proceeds. He claims that, when Bramow handed him the check for $11,510, he knew that it came from the mortgage loan, and accepted it as such; that he did not understand that the check for $4,000 was part of such proceeds and he never intended or understood that he was accepting it as such; but his understanding was that it was drawn on Bramow's personal funds for the payment of his individual note. He therefore brought suit against the bank for $4,000, upon the ground that he had received but $11,510 of the proceeds of the $15,510 check, and that the residue of the amount of the check, to wit, $4,000, was still owing to him from the bank.

At the trial, the court instructed the jury in part in the language of appellant's prayer No. 3, as follows: "The jury are instructed if they believe from the evidence that the plaintiff did not authorize the endorsement purporting to be his upon the check for $15,510, but with knowledge that the checks for $11,510 and $4,000 represented the proceeds of the said check for $15,510, he received and endorsed the said checks for $11,510 and $4,000 and which said checks for $11,510 and $4,000 bearing the indorsement of the plaintiff were presented to the defendant bank and paid by it, then the plaintiff as a matter of law received the full amount of the said check for $15,510 and your verdict shall be for the defendant."

The court, however, refused to charge the jury as prayed by appellant in its prayer No. 1, which reads as follows: "The jury are instructed if they believe from the evidence that the plaintiff accepted the check for $11,510 from Harry A. Bramow, with knowledge that the said check represented a portion of the proceeds of the check for $15,510, and with knowledge that his, the plaintiff's, name had been written on the back of said check for $15,510, then the plaintiff as a matter of law ratified the writing of his name upon the back of the said check for $15,510 and the verdict should be for the defendant."

The jury returned a verdict for the plain-

tiff for $4,000 and interest; and the court, after overruling a motion for a new trial, entered judgment upon the verdict.

The bank as appellant assigns but two errors in this appeal: First, the refusal of the court to instruct the jury as requested in its prayer No. 1; and, second, the order of the court overruling the motion for a new trial.

■ Defendant's prayer No. 1 is to the effect that, if Maiatico accepted the check for $11,510 from Bramow, knowing that it represented a portion of the proceeds of the check for $15,510, and knowing also that Bramow had written his (Maiatico's) name on the back of the $15,510 check, then the law would conclusively presume that Maiatico had ratified the indorsement of his name on the check by Bramow, in which event the verdict should be for the bank.

It was not error for the court to refuse to give this instruction, for it ignores all of the other facts and circumstances shown by the evidence in the case. The issue of ratification presents a question of fact, and depends upon the intent of the party. It is "the adoption by a person as binding upon himself of an act done in such relations that he may claim it as done for his benefit, although done under such circumstances as would not bind him but for his subsequent assent." 52 C. J. 1144. Whether such assent has been given under certain circumstances is to be found by the jury from all the evidence in the case.

Ratification is a matter of intention. It may be expressed or it may be implied, but, in order to establish an implied ratification, there must be some act or some conduct on the part of the principal clearly showing such intention, or, as it was expressed by the Supreme Court, "Such ratification may be by express consent, or by acts and conduct of the principal inconsistent with any other hypothesis than that he approved, and intended to adopt what had been done in his name." Marshall County Supervisors v. Schenck, 72 U. S. (5 Wall.) 772, 782, 18 L. Ed. 556.

■ The instruction in question would have required the jury to find ratification if they believed Maiatico accepted a part of the proceeds of the check with knowledge that Bramow had unlawfully indorsed his (Maiatico's) name thereto. Ordinarily, it is true that one who voluntarily accepts the whole or any part of the proceeds of an act done by one assuming, though without authority,

to be his agent must ordinarily be deemed to ratify the act (Mechem on Agency, § 435), but this general rule, like all general rules of law, is applicable only where the facts proved justify its use, and also like most general propositions of law is subject to exceptions—for instance, that acceptance was with full knowledge of all the circumstances, or that it was in an effort to avoid greater loss, etc. It may be argued that the evidence here fails to show any of these exceptions, and that therefore the instruction as drawn correctly stated the law, but, even if this be conceded, we think the failure to give it in the form in which it was asked is without significance, for the reason that the charge as given amply and fully covered the point and as given stated the question to the jury as favorably to the defendant as it was entitled to ask.

The evidence discloses a clear-cut contradiction between the parties on the subject of what occurred when Maiatico received the lesser sum. His testimony is that Bramow informed him that was the amount of a check which had been erroneously made to his (Bramow's) order, and that the $4,000 check which Bramow presented at the same time was drawn on Bramow's own funds and had no relation to any payment then due to Maiatico. On the other hand, Bramow, testifying for the bank, said that he and Maiatico were in a sense partners in the building operation, and that he had Maiatico's authority to sign his name to checks, and that he explained to Maiatico, and that the latter fully understood that Bramow had cashed a check to Maiatico's order for the full sum of $15,510 and that the division of this sum into two checks was with Maiatico's full knowledge and consent. In this aspect the issue was squarely made, and the decision depended upon whether the jury believed Maiatico's statement or Bramow's, and if there had been a failure on the part of the court to charge fully and satisfactorily on this subject, we should find it necessary to reverse the judgment below, but we think the issue was met in that part of the charge which the court gave the jury as follows: "The main question here is whether he (Maiatico) knew that he was getting the $4,000 as a part of the check which had been made payable to him and been indorsed in his name by Bramow. If he knew it, then the bank would not be liable. If he did not know it, then that would not be a payment to him of that money if it was used to pay a note of Bramow's even though Maiatico was the indorser on that note." This part of the court's charge to the jury was intended to, and we think did, cover the defendant's theory of the case as supported by Bramow's testimony.

Bramow's story to the jury as we have seen was that he had given Maiatico two checks, one for $11,510 and one for $4,000, both made to the order of Maiatico, and had told Maiatico at the same time that these two checks represented the sum of a check made to the order of Maiatico which he (Bramow) had received and cashed, and that the payment of the $4,000 check over to the bank to take up Bramow's note was done with the full knowledge and consent of Maiatico. The charge of the court told the jury that, if they believed that Maiatico knew when he received the $4,000 check from Bramow that it represented a part of the proceeds of the $15,510 check and likewise knew that Bramow had received the latter check and had indorsed Maiatico's name to it and gotten the money, then in such case Maiatico was bound by the transaction and could not recover over against the bank.

Without regard to a decision on the question whether the rejected instruction in the circumstances we have related stated correctly a general principle of the law of agency, we think the charge of the court to the jury sufficiently covered the point and was at least as favorable to the bank as it was entitled to, and hence it follows that the court's refusal to give the instruction was not error.

■■ Nor can we sustain the assignment of error relating to the lower court's refusal to grant appellant a new trial. "It is settled law in this court that the action of the trial court in granting or refusing a new trial is not reviewable. * * * Even where the motion for a new trial is based upon newly discovered evidence, the action of the trial court will not be disturbed, unless there has been a manifest abuse of discretion." Fitzgerald v. Dodson, 58 App. D. C. 150, 26 F.(2d) 522. In the instant case we find no such abuse of discretion.

The judgment of the lower court is affirmed, with costs.

Affirmed.